106 P.3d 827 (2005)
STATE of Washington, Respondent,
v.
Lisa D. JUNGERS, Appellant.
No. 30110-5-II.
Court of Appeals of Washington, Division 2.
February 15, 2005.
*828 Pattie Mhoon, Attorney at Law, Tacoma, WA, for Appellant.
John Michael Sheeran, Peter J. Mullenix, and Jennifer Steele, Attorneys at Law, Pierce Cty. Prosecutors, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
HUNT, J.
Lisa D. Jungers appeals her conviction for unlawful possession of methamphetamine. She argues (1) the trial court erred in admitting evidence seized during an illegal search of probationer Michael Hodgkins' residence, (2) the prosecutor committed misconduct in eliciting and arguing inadmissible opinion evidence, and (3) the trial court abused its discretion in denying Jungers' motion for a mistrial based on prosecutorial misconduct. Holding that the search and seizure were legal, we affirm the trial court's ruling that the methamphetamine was admissible. Holding further that prosecutorial misconduct required a mistrial, we reverse.

FACTS

I. SEARCH AND SEIZURE
Michael Hodgkins was a convicted drug offender on community supervision. He had signed a community supervision form requiring him (1) to submit to searches of his person and residence when ordered to do so by his community corrections officer (CCO), and (2) not to use or to possess controlled substances.
A Tacoma police officer contacted CCO William McDonough about several hotline[1] reports of illegal drug activity at Hodgkins' residence. During the two weeks preceding the search at issue here, police contacted a person who asserted there was illegal activity at Hodgkins' residence.
CCO McDonough went with police Officers Mettler and Bowers to Hodgkins' residence to talk to Hodgkins about potential community supervision violations. After the officers explained their presence, Hodgkins denied any drug activity. When CCO McDonough asked if he could look around, Hodgkins stated it was not a problem and McDonough could look around.
Hodgkins, another male, and defendant Lisa Jungers were present. Hodgkins told the officers that another person lived with him, a handicapped person. McDonough told Hodgkins that the search was authorized only for his (Hodgkins') personal living area and the common areas. Hodgkins indicated which bedroom was his.
In Hodgkins' bedroom, Officer Mettler found women's lingerie and a pair of women's shoes. Under the mattress, CCO McDonough found a small bag of white powder, later determined to be methamphetamine, and a pipe. Hodgkins denied owning the drugs.
Officer Mettler asked who owned the items. Jungers asked Mettler where the pipe and drugs were found; then, after learning the items had been under Hodgkins' mattress, she stated they belonged to her. Mettler advised Jungers of her Miranda[2] rights. Jungers acknowledged her rights and repeated that the drugs were hers. The officers arrested Jungers.

II. PROCEDURE[3]
The State charged Jungers with unlawful possession of a controlled substance.

*829 A. Suppression Hearings
Finding the search and seizure lawful, the trial court denied Jungers' CrR 3.6 motion to suppress the methamphetamine and pipe. The trial court granted in part and denied in part Jungers' CrR 3.5 motion to suppress her statements to police, excluding statements she made before being given Miranda warnings and admitting statements she made after the Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

B. Trial
During the State's direct examination, Officer Mettler testified that he believed the seized drugs belonged to Jungers. The trial court sustained Jungers' objection and struck Mettler's testimony about this belief. But later, the prosecutor asked Mettler why he believed Jungers when she said the drugs were hers. This time, the trial court sustained Jungers' objection before Mettler answered the question.
Jungers testified (1) she did not live at Hodgkins' residence, but she had spent the previous night there; (2) the underwear and shoes found in Hodgkins' bedroom were hers; (3) the drug items did not belong to her; and (4) she had claimed ownership of the drugs at the time of the search and seizure because she knew Hodgkins would go to jail if the officers thought the drugs were his. After all evidence was in, the trial court granted Jungers' motion to dismiss the unlawful use of drug paraphernalia charge, leaving only the possession of methamphetamine charge for the jury to consider.
In closing, the prosecutor argued that Jungers had admitted the drugs were hers and the officers believed Hodgkins when he said he was "clean." Jungers again objected, and the trial court heard arguments at sidebar, after which Jungers asked for a mistrial based on the prosecutor's improper reference to previously stricken testimony.
Jungers further objected to the demonstrative chart the State used in closing argument. The first page of the chart, labeled "constructive possession" at the top, displayed a list of facts, including the phrase "admission real." A second page listed several facts, including the words "three officers believed." Report of Proceedings (RP) at 133-34. During a sidebar conference, the trial court ordered the State to black out the word "believed" and to replace it with "heard admission," which the prosecutor did.
The trial court denied Jungers' request for a mistrial, noting that (1) it had sustained Jungers' objections and had stricken the officer's testimony; (2) the jury would disregard the stricken testimony as instructed; and (3) the jury should also be trusted to follow the court's instruction to disregard any argument the evidence did not support. Accordingly, the trial court gave no additional instructions to the jury about the prosecutor's improper argument.
In Jungers' closing, she argued that although she was guilty of lying to the officers at the scene, she was not guilty of possessing the methamphetamine. In rebuttal, the State argued it was the jury's job to decide who was credible; stressing that Jungers' admission at the scene was believable.
The jury found Jungers guilty of unlawful possession of methamphetamine. She appeals.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT
Jungers argues (1) the prosecutor committed misconduct by eliciting inadmissible credibility testimony and arguing stricken credibility testimony to the jury, and (2) the trial court erred by denying her motion for a mistrial based on this prosecutorial misconduct.

A. Standard of Review
A criminal defendant's right to a fair trial is denied when the prosecutor makes improper comments and there is a substantial likelihood that the comments affected the jury's verdict. State v. Reed, 102 Wash.2d 140, 145, 684 P.2d 699 (1984). Such is the case here.
*830 A defendant claiming prosecutorial misconduct bears the burden of demonstrating that the conduct was improper and that it prejudiced her defense. State v. Harvey, 34 Wash.App. 737, 740, 664 P.2d 1281, review denied, 100 Wash.2d 1008 (1983). We review allegedly improper comments in the context of the prosecutor's entire argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. State v. Bryant, 89 Wash.App. 857, 873, 950 P.2d 1004 (1998), review denied, 137 Wash.2d 1017, 978 P.2d 1100 (1999).
Issues of witness credibility are for the jury alone to decide. State v. Alexander, 64 Wash.App. 147, 154, 822 P.2d 1250 (1992). Whether an opinion of guilt is expressed directly or through inference, such opinion is equally improper and equally inadmissible because it invades the province of the jury. See State v. Haga, 8 Wash.App. 481, 492, 507 P.2d 159, review denied, 82 Wash.2d 1006 (1973).
A trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant receives a fair trial. State v. Johnson, 124 Wash.2d 57, 76, 873 P.2d 514 (1994). We review the trial court's denial of a motion for a mistrial for abuse of discretion. State v. Lewis, 130 Wash.2d 700, 707, 927 P.2d 235 (1996).
We hold that the prosecutor's comments here so prejudiced Jungers, whose credibility was the central issue, that a mistrial was necessary to insure her right to a fair trial.

B. State's Witness Opinion of Jungers' Credibility

1. Mettler's "belief" the drugs belonged to Jungers
Jungers argues the prosecutor improperly elicited opinion testimony about her credibility. On direct examination of Mettler, the prosecutor asked, "And what happened next, Officer Mettler, after you found the evidence?" RP at 89. Mettler responded, "I talked to some individuals in the residence and through my investigation I determined I believed it belonged to Ms. Jungers." RP at 89. Sustaining Jungers' objection, the trial court struck Officer Mettler's response and instructed the jury to disregard the testimony.
We do not characterize this question, however, as prosecutorial misconduct. Although the officer's response could be characterized as an improper comment on Jungers' credibility or guilt, the prosecutor's question did not elicit this nonresponsive answer from the officer. Moreover, in light of the trial court's striking Mettler's response, this first instance of improper opinion testimony by itself did not create prejudice mandating a new trial.

2. Prosecutor's attempt to elicit from Mettler his belief in Jungers' credibility at the scene
Later, however, in spite of the trial court's previous ruling, the prosecutor directly attempted to elicit an improper response when she asked Officer Mettler, "Why did you believe her [Jungers]?" inviting the officer's comment on Jungers' credibility. But because the trial court sustained Jungers' objection before Mettler responded, there was no improper testimony given that prejudiced the jury. RP at 90.
Even then, however, the prosecutor did not cease focusing on the impermissible subject  the officer's opinion about Jungers' credibility (when she said at the scene that the drugs belonged to her). On the contrary, the prosecutor raised the issue twice more during closing argument.

C. Closing Argument
During the State's closing argument, the prosecutor asserted,
[B]ecause the defendant has said that in fact she was covering for her boyfriend, we are also submitting to you facts that bolster our opinion that her admission is real at the time she made it, when she said it she meant it.

RP at 128 (emphasis added). And later, the prosecutor argued,
Hodgkins, who [Jungers] says she was covering for, her boyfriend, the officer believed he was clean. He had put on *831 weight, he put on 20 to 30 pounds. He told the officers he was clean and they believed him. If Officer McDonough, who's very, very experienced corrections officer. . . .
RP at 129-30 (emphasis added). Jungers objected and requested another sidebar.
Jungers further objected to the butcher paper demonstrative chart that the prosecutor displayed to the jurors during closing argument, addressing each point in sequential order. The chart contained the words "admission real" at the top and "three officers believed" in point number four, which point the prosecutor had not yet reached when Jungers objected and the trial court excused the jury. Jungers then moved for a mistrial based on the prosecutor's misconduct in arguing stricken evidence. The trial court heard argument and admonished the prosecutor that it had already sustained Jungers' objection to and had stricken from the jury's consideration Mettler's testimony that he believed Hodgkins' hearsay statement when he told Mettler the drugs were not his.
The prosecutor explained to the court that the fourth point on the chart, "three officers believed," referred to "the admission of the defendant." RP at 133. The trial court responded, "They believed the defendant," RP at 134; to which the prosecutor replied, "Statement of her drugs, which is why they arrested her and not him." RP at 134. But the trial court noted it had also previously sustained Jungers' objection to this improper opinion testimony and had stricken it.
The trial court denied Jungers' motion for a mistrial, RP at 134, but it directed the State to change its chart to read, "[T]hree officers heard admission," and "she was arrested." RP at 139-40. Jungers again objected, "The belief of another witness as to somebody else's credibility is never admissible. And it was  I move to have it stricken. It was stricken, and now they're raising stricken evidence again in closing." RP at 138. Jungers also asked if the court was going to give additional instruction to the jury to offset the State's emphasis on the officers' beliefs.
The trial court reiterated, "[T]he State is not going to be allowed to argue what anybody believed and not going to be able to argue evidence that was stricken." RP at 137. But when the jury was brought back in, the trial court gave no cautionary or curative instruction. Instead, the prosecutor immediately resumed closing argument. She did not, however, make additional improper comments about the stricken opinion testimony.
We acknowledge that in closing argument a prosecutor has wide latitude to draw reasonable inferences from the evidence and to express such inferences to the jury. State v. Stenson, 132 Wash.2d 668, 727, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998). But here, the prosecutor went too far. The jury's verdict turned on whether they believed Jungers was being truthful when (1) she told the officers at the scene that the drugs belonged to her; or (2) when she testified at trial that the drugs belonged to her boyfriend, Hodgkins, and she had said they were hers at the scene merely to cover for him and to prevent his return to jail. Thus, it was Jungers' conflicting stories and credibility that both sides debated during closing arguments.
We cannot say the jury probably would have reached the same conclusion  finding Jungers guilty of methamphetamine possession  without the prosecutor's improper comments. The State's improper argument resurrected Officer Mettler's stricken inadmissible opinion about Jungers' and Hodgkins' respective credibilities. The trial court did not mitigate this improper argument by reminding the jury to disregard this previously stricken testimony. We acknowledge that the trial court had previously instructed the jury to disregard argument unsupported by the evidence. But under the circumstances here, credibility was central and there was evidence arguably supporting Jungers' version of the events such that absent the State's uncured, improper argument, the jury likely could have believed that the drugs belonged to Hodgkins. And, if the jury had believed the drugs belonged to Hodgkins, it could reasonably have acquitted Jungers.
There is evidence in the record tending to show that Hodgkins, not Jungers, was the *832 more likely possessor of the methamphetamine. The drugs were found under Hodgkins' mattress in his bedroom in his apartment. Jungers had merely spent the night; she did not live there. Both had used drugs in the past. Absent the prosecutor's improper emphasis of the officer's belief in Jungers' credibility at the scene, the jury could reasonably have decided that she was telling the truth at trial and had lied to the officers at the scene simply to protect Hodgkins (who would have been in violation of his community supervision and sent back to jail if police believed the drugs were his). Either way, a determination of Jungers' credibility was critical.
We view the prosecutor's improper attempt to elicit credibility testimony and her closing argument reference to the officer's stricken credibility opinions about Jungers and Hodgkins in the context of (1) the trial court's repeated sustaining of Jungers' objections, evidentiary rulings, and admonitions to the State; (2) the jury instructions; and (3) the critical nature of the central issue for the jury  whether Jungers was telling the truth in (a) claiming the drugs were hers at the scene or (b) in claiming at trial that the drugs were not hers and that she had claimed possession at the scene merely to protect Hodgkins from returning to jail. In our view, the prosecutor's improper, uncured emphasis of the officer's stricken opinion (that Jungers and Hodgkins were both telling the truth about drug ownership at the scene) could reasonably have affected the jury's decision to abandon their role as judges of witness credibility, to overcome Jungers' presumption of innocence, and to find her guilty.
Finding there is a substantial likelihood that the cumulative effect of the prosecutor's improper conduct usurped the jury's fact-finding and credibility-determination functions, we hold that a mistrial was required to ensure Jungers a fair trial. Accordingly, we reverse and remand for a new trial.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: ARMSTRONG, P.J., and VAN DEREN, J.
NOTES
[1] The Tacoma Police Department maintains a "crack" hotline for citizens to report drug activity anonymously.
[2] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] A Rule 9 intern, supervised by a deputy prosecutor, appeared on behalf of the State for the suppression motions and trial. The record does not reflect what actions, if any, the supervising attorney took after the trial court had stricken the opinion and after the Rule 9 intern asked the officer his opinion of Jungers' credibility.