
## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 76874-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ALEXANDER JOHN ZIETZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 24, 2018 |
| | ) | |

MANN, A.C.J. — Alexander Zietz appeals his conviction for possession of a stolen vehicle. Zietz claims that he was deprived of the effective assistance of counsel because counsel failed to object to the inadmissible and prejudicial testimony of a police officer, and that the trial court abused its discretion when it denied his motion for a mistrial. We affirm.

## FACTS

On the evening of November 20, 2016, John Lundgren came out of a movie theater and discovered that his vehicle, a 1994 Honda Accord, was not in the parking lot where he left it. After verifying that the Accord had not been towed away, Lundgren called the police to report the missing vehicle. A police officer came to Lundgren's house and prepared a report.

Shortly thereafter, City of Federal Way police officer Charlie Hinkle observed a Honda Accord exit the highway with several occupants, ran the license plate number through several law enforcement databases, and discovered that the vehicle had just been reported as stolen. Officer Hinkle, who was driving a marked police car, did not activate his siren or lights, but followed the Accord as it made a series of sharp turns. He alerted the dispatcher and other officers working in the area that he was following a suspected stolen vehicle. Hinkle continued to follow the Accord when it pulled into a shopping mall parking lot. Hinkle activated his emergency lights when the vehicle stopped. All four occupants opened their car doors simultaneously and got out of the Accord. Officer Hinkle also got out of his vehicle and ordered the occupants to lower themselves to the ground. The three passengers complied. However, the driver of the car, a male with a thin build wearing dark pants and a dark jacket, hesitated for a moment and then "took off running."

Officer Hinkle stayed with the three passengers, while another officer chased the driver on foot as he ran across a six-lane roadway. The driver jumped over a wall and ran toward a cluster of restaurants and the officer lost sight of him. A few moments later, a man, later identified as Zietz, entered the "Two NE Pho" restaurant through the back door, and ran through the kitchen into the dining area. He passed Helen Lee, a server at the restaurant, and asked her where the restroom was. When Lee told him the restroom was for customers only, Zietz sat a table that had just been vacated and removed his jacket. He then moved to a clean table. At the same time, another police officer walked into the restaurant and said, "Where's the guy[?]" Lee pointed to Zietz

and the officer arrested him. Officer Hinkle arrived at the scene of the arrest and verified that Zietz was same person who had been driving and fled from the vehicle.

Police officers took Lundgren to the parking lot and he identified the Accord as his car, but could not identify Zietz or the other individuals who were detained at the scene. He said he had not given anyone permission to use his car. In the car, the police found a small folding knife on the driver's seat and gloves on the ground near the driver's side door. The ignition slot appeared to have been widened.

The State charged Zietz with possession of a stolen vehicle. At trial, the State presented the testimony of Lundgren, Hinkle, Lee, and a second police officer. Zietz did not testify. The jury convicted him as charged.

## ANALYSIS

### Ineffective Assistance of Counsel

Zietz contends that aspects of Officer Hinkle's testimony constituted "inadmissible profile testimony" and/or improper opinion testimony. He claims that defense counsel's failure to object deprived him of effective assistance of counsel. We disagree.

We review ineffective assistance of counsel claims de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant's case. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. State v. Stenson, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot serve as a basis for a claim that the defendant did not receive effective assistance of counsel." State v. Lord, 117 Wn.2d 829, 883, 822 P.2d 177 (1991). To establish prejudice, the defendant must show that but for counsel's performance, the outcome would have been different. State v. McLean, 178 Wn. App. 236, 248, 313 P.3d 1181 (2013).

Officer Hinkle testified about his experience as a patrol officer investigating stolen vehicles. In the course of his experience, he learned that older model Japanese sedans are mechanically easier to steal than other cars because they do not have computer chip technology or key fobs. Officer Hinkle testified that typically, it is possible to start such a car by inserting a slim, hard object into the ignition and forcing it to turn past the locking pin. He also explained that it is often possible to access such a vehicle, even if locked, without breaking a window or otherwise damaging the outside because keys may be interchangeable or may be slightly modified to work on a variety of models.

In addition to responding to reports of crime, Officer Hinkle testified that his work as a patrol officer includes proactive work aimed at detecting ongoing criminal activity, including identifying stolen vehicles. To that end, he said that during a typical 10-hour shift, he may run the license plates of up to 100 vehicles. Officer Hinkle explained that he checked the license plate of Lundgren's vehicle because it was a 1990s model

Honda Accord that was occupied by several people, which is "typical of stolen cars." Based on his experience, Officer Hinkle testified that drivers of stolen cars may sometimes do a "heat check," which involves making a few sharp turns in order to determine whether they are being followed. Officer Hinkle said that once the Accord pulled into the shopping area parking lot, the occupants were "likely" aware of his presence because the vehicle was moving slowly and were not many vehicles in the parking lot.

Officer Hinkle explained that he advised other officers in the area that he was following a suspected stolen vehicle and requested a K-9 track because the pursuit of stolen vehicles often leads to a vehicle pursuit or a foot chase. Finally, when asked about the likely significance of gloves found next to the Accord, Officer Hinkle said it was an indication that the person wearing the gloves did not want to leave fingerprint evidence.

Zietz claims that counsel performed deficiently by failing to object to Officer Hinkle's testimony that: (1) stolen cars typically have multiple occupants, (2) a driver of a stolen car may make multiple sharp turns in order to detect whether he or she is being followed, (3) the occupants of the Accord were aware of his presence in the parking lot, (4) occupants of stolen vehicles often flee, and (5) gloves indicate an intent to avoid leaving fingerprint evidence.

Zietz asserts first that his counsel was ineffective for failing to object to inadmissible profile evidence. Profile evidence identifies a group of people as more likely to commit a crime, and is inadmissible if it is used to lead to the conclusion that a defendant must have committed the charged acts because he shared the

-5-

characteristics of known offenders. State v. Braham, 67 Wn. App. 930, 937, 841 P.2d 785 (1992). In other words, testimony that implies guilt based on the characteristics of known offenders is impermissible because it invites the jury to conclude that because of a defendant's characteristics, he is statistically more likely to have committed the crime. Braham, 67 Wn. App. at 936.

Here, none of the challenged testimony identified Zietz as a member of a group with a propensity for criminal activity nor improperly implied guilt based on characteristics he shares with other criminals. Officer Hinkle's testimony explaining that he ran the license plate number of Lundgren's car because it was a late model Honda with multiple occupants related to characteristics of the vehicle, not that characteristics of Zietz. And Officer Hinkle testified that pursuit of stolen vehicles may lead to a foot or vehicle chase not to imply Zietz's guilt, but to explain why he alerted other police officers in the area and requested assistance. Officer Hinkle's testimony did not imply to the jury that it should find Zietz guilty because of his characteristics or his association with a particular group.

Zietz also contends that his counsel was ineffective for failing to object to impermissible opinion testimony on credibility or guilt. A witness may not express an opinion, either directly or indirectly, on credibility or guilt and it is error to admit opinion testimony which goes to a core element of the crime charged unless the testimony has a substantial factual basis. State v. Kirkman, 159 Wn.2d 918, 927-28, 155 P.3d 125 (2007); State v. Farr-Lenzini, 93 Wn. App. 453, 462-63, 970 P.2d 313 (1999). "The fact that an opinion supports a finding of guilt does not necessarily make the opinion improper," particularly where the opinion is supported by inferences from evidence.

-6-

State v. Blake, 172 Wn. App. 515, 523, 298 P.3d 769 (2012). Opinion testimony is more likely to be improper if it recites or parrots a legal conclusion. City of Seattle v. Heatley, 70 Wn. App. 573, 581, 854 P.2d 658 (1993). "[T]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." Heatley, 70 Wn. App. at 578.

Zietz primarily relies on Farr-Lenzini, which involved a prosecution for attempting to elude a police vehicle. In Farr-Lenzini, a Washington State Patrol trooper testified that the defendant's driving pattern "exhibited to me that the person driving that vehicle was attempting to get away from me and knew I was back there and refusing to stop." Farr-Lenzini, 93 Wn. App. at 458. On appeal, the court reversed the conviction because the officer's opinion directly addressed a "core element" of the charged offense, namely whether the defendant was willfully eluding a law enforcement officer, and was not supported by an adequate factual basis. Farr-Lenzini, 93 Wn. App. at 462, 465.

Here, unlike the trooper in Farr-Lenzini, Officer Hinkle did not offer an opinion that directly addressed a core element of the charged offense. The only disputed issue was whether Zietz knew that the car he was driving was stolen. The officer's testimony about whether the occupants were aware of his presence, about "heat check[ing]," and about the possible purpose of gloves did not express opinion about Zietz's guilt or knowledge. There was also a factual basis for the testimony because it was based on reasonable inferences drawn from the officer's direct observations and from his prior experience.

We also cannot say that counsel's failure to object was not a legitimate trial tactic or strategic, given that repeated objections may well have served to highlight the testimony. And with respect to the testimony concerning the likely purpose of gloves, instead of objecting, counsel effectively minimized the significance of the testimony by emphasizing that the police report did not mention any gloves found in or around the Accord. Counsel also forced the officer to admit that he had not even noticed the gloves until he viewed a photograph at trial. Counsel's questions also made it clear that the officer did not see the driver wearing or discarding gloves.

Zietz fails to establish ineffective assistance of counsel based on counsel's failure to object.

### Mistrial

Zietz next contends that the trial court erred in denying his motion for a mistrial. We disagree.

A mistrial is appropriate only when the defendant has been so prejudiced that nothing short of a new trial can guarantee a fair trial. State v. Jungers, 125 Wn. App. 895, 901-02, 106 P.3d 827 (2005). Only errors affecting the outcome of the trial are deemed prejudicial. State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). To determine the effect of an irregularity, courts examine "(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it." Hopson, 113 Wn.2d at 284.

"We review the trial court's denial of a motion for a mistrial for abuse of discretion." Jungers, 125 Wn. App. at 902. A trial court abuses its discretion when it bases its decision on unreasonable or untenable grounds. State v. Rohrich, 149 Wn.2d

-8-

647, 654, 71 P.3d 638 (2003). The trial court is in the best position to determine if a trial irregularity caused prejudice. State v. Perez-Valdez, 172 Wn.2d 808, 819, 265 P.3d 853 (2011).

The prosecutor asked Officer Hinkle to describe Zietz's demeanor at the time of his arrest. Officer Hinkle responded:

> It was very fidgety. He was sweating, and based on my experience he appeared to be under the influence of some sort of stimulant.

Counsel objected and the prosecutor offered to rephrase. The court promptly instructed the jury to "disregard the answer."

Zietz moved for a mistrial. After hearing argument, the court denied the motion. The court concluded that because the testimony was limited in scope, the objection was prompt, and the jury was instructed to disregard the answer, there was no "prejudice sufficient to warrant a mistrial."[1] Zietz contends that the court abused its discretion in denying his motion.

The court's ruling was tenable. While Zietz claims that Officer Hinkle's testimony was a clear violation of the court's in limine ruling, he overstates the scope of the ruling. The defense moved pretrial to exclude evidence of "drugs and paraphernalia" recovered from the stolen vehicle. Based on the State's position that it did not intend to introduce the drug evidence, the court granted the motion. The testimony about Zietz's appearance and his appearance of being under the influence of a stimulant at the time of arrest, while objectionable, did not contravene the court's pretrial ruling.

---

[1] Both the trial court and the prosecutor were apparently unable to hear Officer Hinkle's reference to a stimulant over defense counsel's objection, but for the purpose of the mistrial motion, the trial court assumed that the jury heard the officer's entire response.

To the extent that an irregularity occurred here, it was also not extremely serious. Courts have found serious and incurable irregularities where the jury has heard inadmissible testimony that is inherently prejudicial and logically relevant to the current charge. For example, the case Zietz principally relies on, State v. Escalona, 49 Wn. App. 251, 252, 742 P.2d 190 (1987), involved a charge with assault with a deadly weapon. Despite the court's prior exclusion of any reference to the defendant's prior conviction for the same crime, a witness stated that the defendant "ha[d] a record and had stabbed someone." Escolona, 49 Wn. App. at 252-53. The irregularity could not be cured by instruction, in part because of the "logical relevance" between the witness's statement and the charged crime. Escolona, 49 Wn. App. at 256. The court found it likely that the jury would conclude that the defendant had acted in conformity with the "assaultive character" he had demonstrated in the past. Escolona, 49 Wn. App. at 256. Similarly, in State v. Babcock, 145 Wn. App. 157, 165-66, 185 P.3d 1213 (2008), the admission of hearsay testimony about a dismissed child molestation charge in a child rape case was an extremely serious irregularity where the acts related to the dismissed charge were so similar to those involved in the rape charge that it would be inherently difficult for the jury to disregard the testimony.

Here, in contrast, the officer did not indicate that Zietz had a propensity to take motor vehicles without permission or that he had ever been convicted of a similar crime. Nor was the statement likely to make a significant impression on the jury. Based on the events the witnesses described, the jury could have concluded that there were several plausible explanations as to why Zietz was sweaty and appeared to be nervous when he was apprehended.

-10-

While the testimony was not cumulative of other evidence presented, the reference to a possible stimulant was isolated and fleeting. And the court immediately instructed the jury to disregard testimony about third party statements. Absent evidence to the contrary, we presume that the jury followed the trial court's instructions. <u>Kirkman</u>, 159 Wn.2d at 928.

As a result, there is not a substantial likelihood that Officer Hinkle's statement affected the jury's verdict. The brief reference to a stimulant was not so damaging as to warrant a mistrial and the court's curative instruction was sufficient to alleviate any prejudice that may have resulted. The trial court did not abuse its discretion.

Affirmed.

_Mann, ACJ_

WE CONCUR:

_Smith, J._     _Leach, J._