# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83245-0-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KEVIN DALE BEST, | |
| Appellant. | |

FELDMAN, J. — A jury convicted Best of attempted first degree child molestation and attempted second degree rape of a child. Best alleges that multiple errors occurred during the course of his trial. Because the facts of this case are known to the parties, we do not repeat them here except as relevant to the arguments below. We find no reversible error and affirm.

A.      Denial of Surrebuttal Closing Argument

Best asserted an entrapment defense at trial. Because Best had the burden of proof on that defense, he requested surrebuttal closing argument. Best argues that the trial court abused its discretion when it denied the request. Br. at 28. "To find abuse of discretion, a court must be convinced that no reasonable person would take the view adopted by the trial court." *L.M. by and*

1

*through Dussault v. Hamilton*, 193 Wn.2d 113, 135, 436 P.3d 803 (2019) (internal quotation marks omitted). Here, there was no such abuse of discretion.

This issue is governed by Criminal Rule 6.15(d), which states: "The court shall read the instructions to the jury. The prosecution may then address the jury after which the defense may address the jury followed by the prosecution's rebuttal." The rule does not require or even mention surrebuttal closing argument and concludes the description of closing arguments with the prosecution's rebuttal. The trial court did not abuse its discretion by denying closing surrebuttal argument in strict compliance with the rule.

Best cites Civil Rule 51(g) and *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 359 P.3d 919 (2015), for the proposition that when the criminal rules fail to address a specific procedure, the civil rules may be instructive on what procedure to follow. While that is a correct statement of the law, it does not establish an abuse of discretion here because CrR 6.15(d) does not fail to address the specific procedure at issue. To the contrary, the rule provides the exact procedure that the trial court followed.

Our opinion in *State v. Thomas*, 91 Wn. App. 1027 (1998), *aff'd in part on other grounds*, 138 Wn.2d 630, 980 P.2d 1275 (1999), is instructive here.[1] Defense counsel there requested surrebuttal closing argument, citing CR 51(g), because Thomas was asserting an insanity defense for which he carried the burden of proof. This court held: "This assignment of error is not well taken.

---

[1] Although *State v. Thomas* is an unpublished opinion, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision." GR 14.1(c). We adopt the reasoning of *Thomas* as stated in the text above.

Criminal Rule 6.15(d) takes precedence over CR 51, and provides that the prosecution opens and closes argument." *Thomas* at 5. The same reasoning and result apply here as well.

For these reasons, the trial court did not abuse its discretion when it denied Best's request for surrebuttal closing argument.[2]

B.     Ineffective Assistance of Counsel

Best argues that his trial counsel was ineffective because they failed to provide the trial court with legal authority showing that it had discretion to grant surrebuttal closing argument.

To show ineffective assistance of counsel, Best must establish: "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021).

Our Supreme Court has held that "[w]here an attorney unreasonably fails to research or apply relevant statutes without any tactical purpose, that attorney's performance is constitutionally deficient." *In re Yung-Cheng Tsai*, 183 Wn.2d 91, 102, 351 P.3d 138 (2015). While *Tsai* provides strong support for Best's

---

[2] Our holding might be otherwise if Best's attorney had asked for surrebuttal closing argument again after the prosecution's rebuttal closing argument and had identified specific points that merited a response. But here, the prosecution's rebuttal closing argument regarding the entrapment defense was both brief and unexceptional, and Best does not identify in his appellate briefs anything his trial lawyer would have said in surrebuttal closing argument that was not already said during his lawyer's earlier closing argument.

argument that defense counsel's representation was deficient, Best does not, and cannot, establish prejudice because, as addressed above, the trial court's rulings regarding surrebuttal closing argument are consistent with CrR 6.15(d) and our prior opinion in *Thomas*.

Because Best is unable to establish a reasonable probability that, except for defense counsel's alleged errors, the result of the proceeding would have been different, his ineffective assistance of counsel argument fails.

C.     Exceptional Sentence Requests

Best argues that the trial court erred by failing to exercise its discretion to impose an exceptional sentence below the standard range based on: (1) RCW 9.94A.535(1)(d), which states that "[t]he court may impose an exceptional sentence below the standard range if it finds . . . by a preponderance of the evidence . . . [t]he defendant, with no apparent predisposition to do so, was induced by others to participate in the crime;" and (2) RCW 9.94A.535(1)(a), which applies if the trial court finds "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident."  We reject these arguments.

Starting with RCW 9.94A.535(1)(d), Best argues that the trial court erred by failing to recognize that it had discretion to impose an exceptional sentence below the standard range based on the failed defense of entrapment.  While Best correctly argues that a trial court's failure to exercise discretion can itself constitute an abuse of discretion, the trial court here did not fail to exercise discretion nor did it categorically refuse under any circumstances to impose an

exceptional sentence below the standard range. To the contrary, the court carefully reasoned and explained:

> I poured [sic] over those text messages for a variety of hearings for a variety of reasons, and I understand what you are telling me today about what your intentions are. But I cannot find based on your conversation, based on your willingness to engage in discussions about what you wanted to do, I am frankly particularly in your discussion with the fictional child, Lisa, that while perhaps this was not what you originally intended when you responded to the ad, that at the time you had the phone call with a fictional child that you were committed to the scenario and as more than simply fantasy role play. So, for that reason, I cannot grant the request for a downward departure under subsection D.

"[A] trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). Because the trial court here appropriately recognized and exercised its discretion, Best's contrary argument fails.

Nor did the trial court err by failing to exercise its discretion to impose an exceptional sentence below the standard range based on RCW 9.94A.535(1)(a). Addressing that issue, the trial court ruled: "as strange as it may seem, [A] and L (sic) were the victims in this case. Even if they had been real children, they based on their ages could not have participated or been initiators or willing participants in the offenses. For that reason, the Court declines a downward departure under subsection A."

The trial court did not abuse its discretion in so ruling. Best provides no authority for his argument that an 8- or 12-year-old victim can be an "initiator, willing participant, aggressor, or provoker of the incident" for purposes of

applying RCW 9.94A.535(1)(a). This, by itself, is dispositive. *See State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Best analogizes this case to *State v. Clemens*, 78 Wn. App. 458, 898 P.2d 324 (1995), but *Clemens* is easily distinguished. In *Clemens*, the perpetrator and the victim were relatively close in age and there was no evidence that the perpetrator was the initiator. *Id.* at 466. Here, at the time when the crime occurred, Best was 42 years old while the "victims" were 8 and 12.[3] Further, Best responded to the advertisement and drove to the location where the offense occurred. On this record, *Clemens* is inapposite.

D.      Prosecutorial Misconduct and Motion for Mistrial

Best argues that the prosecutor committed misconduct and that the misconduct warrants a new trial. "The defendant bears the burden to establish prosecutorial misconduct by showing that the challenged conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial." *State v. Markovich*, 19 Wn. App. 2d 157, 170, 492 P.3d 206 (2021), *review denied*, 198 Wn.2d 1036, 501 P.3d 141 (2022). To show prejudice, "the defendant must prove that there is a substantial likelihood that the misconduct affected the jury's verdict." *Id.*

---

[3] The parties disagree as to whether RCW 9.94A.535(1)(a) is applicable where, as here, the "victim" is fictitious. We need not, and do not, address that issue because, even if RCW 9.94A.535(1)(a) applies here, Best's argument easily fails based on the age of the fictitious victims.

The alleged misconduct at issue here occurred during the trial testimony of Sergeant Carlos Rodriguez, who described how the Net Nanny operation was developed and conducted.[4] During redirect, the prosecutor asked Sergeant Rodriguez, "Is there anything that you're looking for during the course of chatting in that context?" Sergeant Rodriguez responded:

> If someone is talking about a fantasy, it doesn't mean you don't just talk about it, though, because on the training and experience of the cases I've worked, when people detail what their fantasy is, oftentimes that can be a reality, which could be something we'd want to look into in the investigation. We'd want to explore that.

During recross examination, Best's counsel followed up on this answer by asking Sergeant Rodriguez, "is it relevant to you in your assessment as an officer, whether someone has committed this type of crime in the past?" Sergeant Rodriguez responded, "if someone has committed that type of crime in the past, that could mean that they have a history of doing this, so that would be relevant."

Then, during re-redirect, the prosecutor asked the inverse of the question that defense counsel had asked on recross and the following colloquy occurred:

Q:     Is it relevant to you if someone hasn't committed it in the -- it in the past?

MR. PENCE: Objection.

. . . .

THE COURT: Overruled.

. . .

Q:     . . . is it relevant to you that someone hasn't committed something like this in their past?

A:     No.  You don't know -- well, one, people don't always get caught, and there are people that we have arrested or

---

[4] Best was arrested after he responded to an advertisement that the Washington State Patrol posted on Craigslist as part of an undercover sting operation referred to as "Net Nanny."

> commit crimes for the first time.
>
> . . . .
>
> MR. PENCE: Objection.
>
> . . . .
>
> THE COURT: [T]he objection I'm considering is whether the answer was nonresponsive.  That is sustained.  The portion of the answer after "no" is stricken.
>
> Q:     Okay.  Why is it not relevant to you?
>
> A:     It's not relevant to me, because people don't always get caught.
>
> MR. PENCE: Objection.

In addition to objecting, Best moved for a mistrial, asserting that the prosecutor's questions, which ultimately prompted Sergeant Rodriguez to testify "people don't always get caught," were improper because "it's shifting the burden" to the defense to show that Best had not previously committed a sex offense.  Because it was late afternoon, the jury was excused for the day while the court addressed these issues.

The trial court heard extensive oral argument regarding Best's objection and motion for mistrial.  Because the alleged misconduct occurred on a Friday, Best's counsel also was able to prepare and file a written motion for a mistrial, and the State responded to that motion, before trial resumed on Monday.  Following oral argument, the trial court gave the following curative instruction:

> Before we resume with testimony, at the conclusion of the day on Friday, the parties heard an objection.  That objection has been sustained, and the jury is instructed to disregard the answer.  If you took notes on that, we'll ask you to cross that out of your notepad, and then you may resume taking notes.

Having addressed the alleged misconduct by curative instruction, the trial court ultimately denied Best's motion for mistrial.

Reviewing the prosecutor's conduct in the context of the entire record and the circumstances at trial, as required by precedent, we reject Best's prosecutorial misconduct argument. The prosecutor asked the questions at issue here in response to a previous question by defense counsel regarding the potential relevance to Sergeant Rodriguez's "assessment as an officer, whether someone has committed this type of crime in the past." A prosecuting attorney "is entitled to make a fair response to the arguments of defense counsel." *State v. Brown*, 132 Wn.2d 529, 566, 940 P.2d 546 (1997). While the trial court concluded that the prosecutor's initial question "was completely inbounds," it nonetheless gave a curative instruction in which it directed the jury to disregard the testimony that included "people don't always get caught." We presume that a jury follows the instructions provided by the court. *State v. Allen*, 182 Wn.2d 364, 380, 341 P.3d 268 (2015).

Also significant here, the prosecutor appears to have assisted the trial court in curing any prejudice caused by the alleged misconduct. Consistent with the Supreme Court's recognition in *State v. Monday*, 171 Wn.2d 667, 676, 257 P.3d 551 (2011), that "[t]he prosecutor owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated," the prosecutor acknowledged the defense's concerns about improper burden shifting and informed the trial court, "Nor am I going to be arguing that." Then, in closing argument, the prosecutor avoided any improper burden shifting and told the jury, "Best doesn't have any criminal history." Given this unique constellation of facts, and the requirement that we consider "the entire record and the circumstances at

trial" in deciding this issue, we are unable to conclude that Best is entitled to a new trial based on prosecutorial misconduct and, accordingly, reject this argument.

Nor does *State v. Jungers*, 125 Wn. App. 895, 106 P.3d 827 (2005), cited by Best, require a new trial. In *Jungers*, the prosecutor repeatedly attempted to elicit improper testimony regarding the defendant's credibility. While the trial court struck the improper testimony, the prosecutor commented on the defendant's credibility again during closing argument. *Id.* at 903. We held that a new trial was required because the prosecutor's comments during closing argument improperly reminded the jurors of the stricken testimony regarding Jungers' credibility, which was the central issue in the case, and the trial court did not mitigate this improper argument by reminding the jury to disregard the previously stricken testimony. *Id.* at 905-06.

The facts at issue in this case are materially different from those in *Jungers*. In the instant case, we do not have repeated attempts by a prosecutor to elicit improper testimony. To the contrary, the trial court ruled that the prosecutor's initial question to Sergeant Rodriguez "was completely inbounds. That objection was overruled. You're absolutely permitted to ask the inverse of that question." While the trial court sustained Best's objection and struck a portion of the answer to the initial question, the court did so because the answer was "nonresponsive," which then prompted the prosecutor to follow up with another question. And far from reminding the jury of any improper testimony in

closing argument, the prosecutor told the jury "Best doesn't have any criminal history." On this record, *Jungers* is inapposite.

E.      Best's Statement of Additional Grounds

Best asserts three arguments in a Statement of Additional Grounds. <u>First</u>, he argues that the trial court erred by ruling that his GR 37(c) challenge was untimely. The trial court's ruling is consistent with the timeliness provision in GR 37(c), which provides that "[t]he objection must be made before the potential juror is excused, unless new information is discovered." The juror here was excused before Best's counsel asserted a GR 37(c) challenge. Because Best has not shown that new information was discovered that would justify an untimely challenge, the trial court's timeliness ruling is correct.[5]

<u>Second</u>, Best claims that there is insufficient evidence that the "[a]ppellant intended to have sex with the girls on the day he arrived at the house or took a substantial step towards the commission of [h]is offenses." We disagree. The evidence here includes, but is not limited to, the testimony of Sergeant Anna Standiford recounting what Best said during phone calls when he believed he was speaking with 11-year-old "A," text messages in which Best described his physical arousal and intentions regarding the fictitious children, and Best's arrival at the fictitious mother's home at the exact time the two of them had agreed upon for a weekend involving sexual contact with the fictitious children. Viewing the evidence in the light most favorable to the State, and drawing all references in

---

[5] Because we hold that Best's GR 37(c) challenge is untimely, we deny as moot Best's motion to strike a paragraph in the State's response to Best's Statement of Additional Authorities.

the State's favor (as required, *see State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)), there is sufficient evidence to convince a rational juror to find beyond a reasonable doubt that Best took a substantial step toward the commission of attempted second degree rape of a child and attempted first degree child molestation.

Finally, Best argues that the State was collaterally estopped from trying him for attempted first degree child molestation and attempted second degree rape of a child after a second charge for attempted second degree rape of a child was dismissed for insufficient evidence. Collateral estoppel is the principle "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *State v. Williams*, 132 Wn.2d 248, 253-54, 937 P.2d 1052 (1997). "The doctrine of collateral estoppel is embodied in the Fifth Amendment guaranty against double jeopardy." *Id.* at 253. To establish collateral estoppel, the proponent must prove the following elements:

> (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice.

*Id.* at 254. As *Williams* clearly shows, collateral estoppel does not apply in the absence of both a prior litigation and a second (future) litigation. Here, in contrast, there was a *single litigation* involving multiple charges. The State, therefore, was not collaterally estopped from trying Best for attempted first-degree child molestation and attempted second-degree rape of a child after the

second charge for attempted second degree rape of a child was dismissed for insufficient evidence.

   We affirm.

Feldman, J.

WE CONCUR:

Chung, J.

Hazel, ACJ